UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:03-CR-62 |
| | ) | |
| | ) | |
| GARY MUSICK and | ) | |
| LITA MUSICK | ) | |
| | ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court for the sentencing of these defendants after their conviction by a jury of various drug related and money laundering offenses. A presentence investigation report has been prepared by the probation office and provided to all parties. Both defendants have filed various objections to the presentence report.

Since these are the first sentencing hearings conducted by this Court since the Supreme Court's decision in *United States v. Booker*, __ S. Ct.__, 2005 W. L. 50108 (January 12, 2005), the Court feels compelled to address the manner in which it will approach sentencing decisions post- *Booker*, so that counsel in this case and counsel in future cases will have some guidance on how to approach these issues.

The Supreme Court held in *Booker* that the United States Sentencing Guidelines, promulgated pursuant to the Sentencing Reform Act of 1984 (18 U.S.C. § 3551 *et seq.*) violated the defendant's Sixth Amendment right to a jury trial because they require judges to find facts used to increase a sentence beyond what could be imposed based solely on the jury verdict. The Court's remedy was to sever the two provisions in the Act that make the guidelines mandatory, e.g. 18 U.S.C. §§ 3553(b)(1) and 3742(e). The excision of these two unconstitutional provisions from the Sentencing Reform Act of 1984 makes the Federal Sentencing Guidelines effectively advisory.

As this Court understands the *Booker* decision, the Court must decide, on a case by case basis, what sentence is reasonable in the case based upon a consideration of the otherwise applicable guidelines range as well as the other statutory factors which are set forth in the Sentencing Reform Act. Title 18, U.S.C. § 3553(a) requires a sentencing court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
>   (A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or

2

vocational training, medical care, or other correctional treatment in
the most effective manner;
(3)  the kinds of sentences available;
(4)  the kinds of sentence and the sentencing range established for:
     (A)  the applicable category of offense committed by the
applicable category of defendant as set forth in the guidelines issued
by the Sentencing Commission . . .;
(5)  any pertinent policy statement issued by the Sentencing
Commission . . .;
(6)  the need to avoid unwarranted sentence disparities among
defendants with similar records who have been found guilty of
similar conduct; and
(7)  the need to provide restitution to any victims of the offense.

The question left unanswered by the Supreme Court's holding is this: How much weight should be given by a sentencing judge to the guidelines in determining what sentence to impose in any particular case? There seem to be three possible alternatives available to the court in determining the weight to be given to the guidelines in light of the *Booker* decision. These possible interpretations are:

1. The guidelines are truly advisory only and we have returned to an indeterminate sentencing system with the trial judge free to impose whatever sentence he believes to be reasonable and for whatever reasons he deems relevant within the applicable statutory minimum and maximum punishment provided for the offense;

2. The guidelines, although advisory and only one factor among

3

others to be considered in arriving at a reasonable sentence, are congressionally approved policy statements entitled to significant weight in the sentencing decision; and

      3. Although advisory, the guidelines establish a presumptively reasonable sentence and departure from within the guideline range should occur only in extraordinary cases.

      In deciding the question of how much weight the guidelines should carry in arriving at a reasonable sentence, this Court has read and reread the majority opinions in *Booker,* as well as the dissenting opinions, has considered the opinions of various legal commentators and scholars and has considered the legal and factual background of the Sentencing Reform Act of 1984 and the purposes to be achieved in criminal sentencing by a federal district court. Based upon that review, this Court believes, post *Booker*, that the guidelines, although advisory and only one factor among others to be considered in arriving at a reasonable sentence, are entitled to substantial weight in the sentencing decision. Only when clearly outweighed by some other factor(s) set forth in § 3553(a) will the Court be inclined to sentence outside the appropriate guideline range.

      Not only are the sentencing guidelines a clear statement of congressional purpose, the United States Sentencing Commission has taken into consideration in formulating the guidelines the various other purposes for the

4

sentence to be imposed set forth in 18 U.S.C. § 3553(a)(2). Perhaps most importantly, it is only through the use of some standards or guidelines that courts can achieve one of the major goals of the Sentencing Reform Act, that is, the elimination of unwarranted disparities in sentencing that often occurred prior to the implementation of the Federal Sentencing Guidelines, a goal which, by the way, is laudable. This Court firmly believes that similarly situated defendants who have committed substantially similar crimes should receive substantially similar punishment for their crimes.

While many district judges who have expressed displeasure with the mandatory application of the guidelines may read Booker as standing for the proposition that the guidelines are "history" and that we have now returned to an indeterminate sentencing system similar to that in place prior to the guidelines, this Court rejects such a notion. Such a position would require the court to ignore the *Booker* majority's statement that "[t]he district courts, while not bound to apply the guidelines, must consult those guidelines and take them into account when sentencing." *Booker* at 21-22. Despite the statement contained in Justice Scalia's dissent that "logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the act was passed, to sentence anywhere within the statutory range", such a conclusion would mean that the sentencing judge had to

5

give only lip service to consideration of the guidelines but could otherwise disregard them totally. Not unimportantly, such a conclusion would also completely frustrate the clearly expressed congressional policy of uniform sentencing.

This Court likewise rejects the viewpoint that the guidelines establish some sort of presumptively reasonable sentence and that departure from within the guideline range should occur only in extraordinary circumstances – circumstances akin to the circumstances justifying an upward or downward departure under the guidelines. Such an approach would completely frustrate the majority holding that the federal sentencing guidelines are subject to the jury trial requirements of the Sixth Amendment and would in reality constitute a return to the previous system. Such a result would render *Booker* truly much "ado about nothing."

For all these reasons, this Court concludes that in exercising its discretion in imposing reasonable sentences, the Court will afford significant weight to the range of imprisonment recommended by the guidelines but will deviate from those guidelines where there exist clearly identifiable and persuasive reasons consistent with the statute for doing so. In those cases where the court deviates from the applicable guideline range, the Court will explain on the record its reasons for doing so.

6

Given the Court's approach to sentencing in criminal cases post-*Booker,* as set forth above, this Court will continue to follow all procedural aspects of the sentencing process as before. In other words, the Court will continue to order the preparation of a presentence investigation report that contains guideline calculations, including calculations based upon the "all applicable adjustments"; counsel will continue to serve the probation officer and opposing counsel with any objections to the presentence report; and the Court will continue to resolve objections as before, either based upon the written objections of the parties where no evidentiary hearing is required or after the sentencing hearing in those cases where further evidence must be heard by the court. The Court will then impose a reasonable sentence applying all the factors set forth in 18 U.S.C. § 3553(a), giving significant consideration to the recommended guidelines range.

**DEFENDANTS' OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

A. GARY MUSICK'S OBJECTIONS

The defendant has filed twenty-three (23) intertwining rambling objections, without citation to a single authority to support his position. The Court will only address those objections that would affect his guideline range.

7

**CAREER OFFENDER**

The defendant objects to his classification as a career offender. In *United States v. Rice*, 66 Fed.Appx. 591, 596-597, 2003 WL 21277334, *5 (6th Cir.(Tenn.)), the Sixth Circuit explained the requirements which must be met to sentence a defendant as a career offender:

> To be sentenced as a career offender under the Sentencing Guidelines,
> (1) a defendant must be at least eighteen years old at the time of the instant offense,
> (2) the instant offense must be a crime of violence or a controlled substance offense, and
> (3) the defendant must have at least two prior felony convictions of either a crime of violence or a controlled substance offense. *U.S.S.G.* § 4B1.1.

In *Rice*, the Sixth Circuit concluded that Rice's attempted sodomy conviction must be both an adult conviction under the relevant state law, and satisfy the conditions of § 4A1.2 based upon the definition of "prior felony conviction" set out at U.S.S.G. § 4B1.2, comment, (n. 1). A "prior felony conviction" is defined in that application note as follows:

> "Prior felony conviction" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. A conviction for an offense committed at age eighteen or older is an adult conviction. <u>A conviction for an offense committed</u>

8

> prior to age eighteen is an adult conviction if it is
> classified as an adult conviction under the laws of the
> jurisdiction in which the defendant was convicted (e.g.,
> a federal conviction for an offense committed prior to
> the defendant's eighteenth birthday is an adult
> conviction if the defendant was expressly proceeded
> against as an adult). (emphasis added)

The issue is this case is the same issue that the Court addressed in *Rice* because the defendant Gary Musick's juvenile adjudication committed prior to age eighteen must qualify as a "prior felony conviction" for him to qualify as a career offender. On May 6, 1998, at age 17, the defendant was adjudicated delinquent for possession of drug paraphernalia and possession of cocaine for resale in the Juvenile Court of Hamblen County, Tennessee.

Tenn Code Ann. §37-1-133(a) provides:

> An order of disposition or other adjudication in a
> proceeding under this part is not a conviction of a
> crime.......

Therefore, Musick's juvenile adjudication committed prior to age eighteen is not an adult conviction because it is neither classified as an adult conviction under the laws of the jurisdiction in which the defendant was adjudicated delinquent, i.e. Tennessee, nor was Musick sentenced as an adult. Because his juvenile adjudication is not a "prior felony conviction", the defendant Musick does not qualify as a career offender under U.S.S.G. § 4B1.1.

9

Accordingly, the defendant's objection to being classified as a career offender is **SUSTAINED.**

**CRIMINAL HISTORY CATEGORY**

The defendant also objects to the calculation of his criminal history category. The defendant received two (2) criminal history points for his juvenile adjudication on May 6, 1998, three (3) criminal history points for his conviction on November 17, 2000 for two counts of the delivery of Schedule II drugs, two (2) criminal history points for being on probation for his November 17, 2000 conviction, and one (1) criminal history point for committing the instant offense less than two years following the defendant's release from custody for the sentence imposed for his November 17, 2000 conviction.

Musick contends that his prior juvenile adjudication and his conviction on November 17, 2000 for drug offenses are part of the same offense as this case and should not be counted in his history calculation. Criminal history points are assessed for prior sentences under *U.S.S.G.* § 4A1.1. The term "prior sentence" means any sentence previously imposed . . . for conduct <u>not part of the instant offense</u>. *U.S.S.G.* § 4A1.2(a)(1). The government has consistently argued that the acts committed by the defendant in regard to his juvenile adjudication on May 6, 1998 and his conviction on November 17, 2000 were acts committed in the furtherance of the conspiracy charged

10

in this indictment which allegedly began in January of 1998. The defendant previously argued that evidence of these offenses was not admissible because the government had failed to file a notice pursuant to Rule 404(b) in regard to prior bad acts.

Accepting the government's argument that these offenses were not Rule 404(b) evidence but rather acts in furtherance of the conspiracy, the Court admitted evidence related to Musick's juvenile adjudication on May 6, 1998 and his conviction on November 17, 2000 at trial. The Court also found that this evidence was not Rule 404(b) evidence because these were not prior bad acts.

The facts of this case are directly on point with *United States v. Walker*, 210 F.3d 373, 2000 WL 353518, *2-3 (6th Cir.(Mich.)) (unpublished), in which the government cited *United States v. Beddow*, 957 F.2d 1330 (6th Cir.1992) and *United States v. Escobar*, 992 F.2d 87 (6th Cir.1993) to support its position that the defendant's felon-in-possession charge and his conspiracy to commit bank robbery and armed bank robbery charges were not related, and therefore, his felon-in-possession charge could be used as a prior conviction for purposes of calculating his criminal history category.

In *Walker*, the Sixth Circuit concluded that the district court's finding that the prior sentence was properly counted as a prior sentence when calculating Walker's criminal history category because it was for a "separate and different offense" and was

11

"severable into two distinct offenses" was clearly erroneous and remanded the case for resentencing. The court in *Walker*, 2000 WL 353518 at 2-3, explained:

> The facts in this case are decidedly different from the cases cited by the government to support its position that the cases are not related. *United States v. Beddow*, 957 F.2d 1330 (6th Cir.1992); *United States v. Escobar*, 992 F.2d 87 (6th Cir.1993). <u>In this case, there is an additional factor not present in the cited cases: evidence from the first conviction was not used to convict the defendant in the subsequent conviction in the other case. Here it was used as evidence.</u> The ammunition found during the January search that led to the possession charge was "inextricably intertwined" with the armed robbery conspiracy charge because without the ammunition and shotgun shell found during that search, Walker might not have been convicted. Furthermore, we note that had the investigation into to the robbery been completed more quickly, it is likely that the felon-in-possession charge would have been consolidated with the conspiracy to commit armed robbery charge. (emphasis added)

In this case as in *Walker*, evidence from the defendant's juvenile adjudication and his adult felony conviction were used to convict the defendant. The Court FINDS that evidence found during the January 31, 1998 search that led to Musick's 1998 possession charge and the proof that Musick had pled guilty to the distribution of cocaine in 2000 was "inextricably intertwined" with the conspiracy charge because without this evidence, Musick <u>might</u> not have been convicted. Furthermore, as in Walker, had the investigation into the conspiracy to distribute and to

12

possess with the intent to distribute cocaine charge been completed more quickly, it is likely that the delivery of Schedule II drugs would have been consolidated with the conspiracy to distribute and to possess with the intent to distribute cocaine charge.

"Prior sentence" is defined in § 4A1.2 as "any sentence previously imposed upon adjudication of guilt .... for conduct not part of the instant offense." In admitting at trial evidence which resulted in Musick's juvenile adjudication on May 6, 1998 and evidence of his conviction on November 17, 2000 as acts in the furtherance of the conspiracy in question, this Court has concluded that these acts were conduct that was part of the instant offense and these offenses are not a "prior sentence" for purposes of calculating the defendant's criminal history category.

Accordingly, the defendant should not receive two (2) criminal history points for his juvenile adjudication on May 6, 1998, three (3) criminal history points for his conviction on November 17, 2000 for two counts of the delivery of Schedule II drugs, two (2) points for being on probation for his November 17, 2000 conviction, and one (1) point for committing the instant offense less than two years following the defendant's release from custody for the sentence imposed for his November 17, 2000 conviction.

The defendant also argues that his two (2) misdemeanor convictions on May 10, 2000 for arrests on February 21, 2000 and April 26, 2000 are not countable because they are related to the 1998 adjudication of delinquency and the November,

13

2000 conviction. Defendant made a proffer that he obtained the drugs from the same source (which he declined to identify) and intended to sell them to the same undercover officer involved in the July 7, 2000 indictment (November 2000 conviction). These misdemeanors possession charges are separate and different offenses, not used as evidence in this case and, according to the defendant, part of a different conspiracy. These convictions are countable.

The Court FINDS that the defendant's total criminal history points are four (4) based upon his two misdemeanor drug convictions on May 10, 2000 for offenses that occurred on February 21, 2000 and April 26, 2000. Therefore, the defendant's criminal history category is III.

## ACCEPTANCE OF RESPONSIBILITY

The defendant cites no authority for the proposition that he is entitled to acceptance of responsibility even though he pled not guilty to all charges and went to trial. Contrary to the defendant's position, the government need not prove that the defendant did not accept responsibility, it is the defendant's burden to clearly demonstrate acceptance of responsibility for his offense. U.S.S.G. § 3E1.1. See *United States v. Farrelly*, 389 F.3d 649, 656 (6th Cir. 2004) This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and

14

expresses remorse. § 3E1.1 at cmt. n.2. The Court FINDS that the defendant has failed to clearly demonstrate acceptance of responsibility for his offenses, that he is not entitled to acceptance of responsibility, and his objection in this regard is **OVERRULED**.

**BASE OFFENSE LEVEL FOR COUNTS 3, 4, AND 7**

On September 17, 2004, the defendant was convicted of Count 3 of the indictment which charged a conspiracy to conduct and attempt to conduct financial transactions knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or control of the proceeds of specified unlawful activity, to wit: the possession with the intent to distribute and the distribution of cocaine, a Schedule II controlled substance. He was also convicted of Count 4 of the indictment which charged that he and Lita Musick, aided and abetted by each other, knowingly and willfully conducted and attempted to conduct a financial transaction affecting interstate commerce: to wit: the payment of $28,000.00 cash for the purchase of a tract of real property in Hamblen County, Tennessee, said payment involving the proceeds of a specified unlawful activity, that is the distribution of cocaine. During trial, this property was identified as the Spring Creek property. In addition, the defendant was convicted of Count 7 of the indictment which charged that he and Lita Musick, aided and abetted by each other,

15

knowingly and willfully conducted and attempted to conduct a financial transaction affecting interstate commerce: to wit: the payment of $15,000.00 cash for the purchase of a Lincoln Navigator, said payment involving the proceeds of a specified unlawful activity, that is the distribution of cocaine.

In their forfeiture verdict, the jury concluded that the value of funds subject to forfeiture in regard to Count 3 was $1,000,000.00 plus the Spring Creek property as recorded on October 23, 2001, in the State of Tennessee, County of Hamblen, Register of Deeds Office Book 834, Pages 34-35 which had a $28,000.00 down payment.

Therefore, the defendants' base offense level for the money laundering offenses is calculated as follows:

1. Base offense level §2S1.1(a)(2)                                  8

2. Value of the funds §2S1.1(a)(2)
   $1,028,000.00   §B1.1(b)(1)(I)                                  +16

3. Proceeds of distribution of
   a controlled substance §2S1.1(b)(1)                             + 6

4. Violation of 18 § 1956 §2S1.1(b)(2)(B)    + 2

                        TOTAL                 32


**QUANTITY OF DRUGS USED TO ESTABLISH THE BASE OFFENSE LEVEL**

The defendant objected to the quantity of cocaine used to calculate his base offense level for his conviction in regard to Count 1which charged him with a

16

conspiracy to distribute and to possess with the intent to distribute a quantity of cocaine. This objection is MOOT because the Court will consider the offense level for Counts 3, 4, and 7, i.e. the money laundering conspiracy and money laundering offenses, to sentence the defendant because these counts have a higher offense level. Section 3D1.1(a)(2) of the U.S. Sentencing Guidelines Manual instructs that after grouping offenses under § 3D1.2, a court should determine the offense level applicable to each group by applying the rules set forth in § 3D1.3. Section 3D1.3(b) calls for applying the offense guideline that produces the highest offense level. *Jenkins v. United States*, 2005 WL 27080, *3 (6th Cir.(Ky.)). While probation determined the defendant's drug offense had a base offense level of 24, this Court must use the base offense level for the defendant's money laundering counts which is 32.

Based upon the foregoing reasons, and the record as a whole, the Court **FINDS** as follows:

In regard to the defendant Gary Musick:

a. His offense level is 32.

b. His criminal history category is III.

c. His sentencing range is 151 to 188 months.


B. LITA MUSICK'S OBJECTIONS

The defendant Lita Musick objects to the six (6) point enhancement that

17

she received in regard to her money laundering counts because these counts involved the proceeds of the distribution of a controlled substance. U.S.S. G. § 2S1.1(b)(1). She contends that the jury verdict does not indicate that the felonious unlawful activity involved in these convictions was the distribution of a controlled substance. Based on the evidence at trial, she contends that the felonious activity was gambling. However, during the trial of this case, the Court specifically charged the jury that the gambling described during the testimony at trial could not constitute the felonious unlawful activity. Therefore, it is hereby **ORDERED** that the defendant's objection in regard to this six (6) point enhancement is **DENIED**.

E N T E R:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE